ERNEST A. REED, RELATOR-RESPONDENT, v. BOARD OF COUNTY CANVASSERS OF THE COUNTY OF ESSEX AND RUSSELL C. GATES, CLERK, DEFENDANTS-APPELLANTS.

ELIZABETH A. HARRIS, CURTIS R. BURNETT AND WALTER S. GRAY, RELATORS-RESPONDENTS, v. BOARD OF COUNTY CANVASSERS OF THE COUNTY OF ESSEX AND RUSSELL C. GATES, CLERK, DEFENDANTS-APPELLANTS.

Argued May 18, 1937—Decided September 22, 1937.

For the appellants, *J. Victor D'Aloia.*

For the respondents, *Merritt Lane.*

The opinion of the court was delivered by

HEHER, J.  Appellants challenge the issuance of peremptory writs of *mandamus* on the orders of Mr. Justice Parker, made in the exercise of the authority conferred by chapter 210 of the laws of 1927 (*Pamph. L., p.* 396), commanding the board of canvassers of the county of Essex, and its clerk, to forthwith issue to relator Reed a certificate of his election to the office of county supervisor, and to relators Harris, Burnett and Gray certificates of their election to membership in the board of chosen freeholders of that municipality.

There arises *in limine* the question of whether this judicial action is appealable.  It is the settled rule in this state, grounded in the ancient common law, that an appeal will not lie to the award or refusal of a peremptory *mandamus* by the Supreme Court, upon the return of a mere rule to show cause, as distinguished from an alternative *mandamus,* except where the refusal necessarily involves the constitutionality

of a statute. *Trinkle* v. *Donnelly,* 98 *N. J. L.* 298; *Mannino* v. *Moffett,* 108 *Id.* 545. However, in the instant case notices were served on November 19th, 1936, of applications for peremptory writs of *mandamus* to be made on the following day at eleven A. M., when, after hearing the arguments of counsel, the writs were awarded; and the insistence is that the failure to proceed by rule to show cause, as laid down in section 3 of the act of 1927, *supra,* constitutes a jurisdictional lack which renders the orders for the writs subject to review and correction on appeal. It is said that the writs were granted "on notice instead of on rule to show cause," without proofs, and "without leave to appellants to present affidavits when a disputed factual situation existed."

But the inquiry need not be pursued; the jurisdictional point so made is moot.

The record shows that, prior to the actual issuance of the writs, the chairman and clerk of the appellant board of canvassers "signed, sealed and delivered" the "certificates of election;" and that thereafter an application was made to the Supreme Court *en banc,* upon notice, for a vacation of the writs, and was denied.

In thus awarding the certificates of election, the board of canvassers discharged its plain statutory duty. Notwithstanding appellants' claim to the contrary, there was no pertinent "factual dispute." Mr. Justice Parker found that the "returns" made by the district boards of election were "in proper legal form," and in all respects sufficient to enable the board to discharge its statutory duty of certification of the election results; and he ruled, and properly so, that it was not the province of the board, in the circumstances, to open the ballot boxes for the purpose of proving the returns made by the several district boards. This is the meritorious question. It is argued that the board of canvassers "is not limited to or by any statements which may be laid before them in determining the person or persons elected * * *;" and that it is the function and duty of the board to "canvass the votes" and "determine the votes cast at such election, without any limitation whatsoever."

The apposite statutory provisions, taken and compared together, demonstrate the fallacy of this contention.

The duties of the canvassing board are set out in article XVIII of the Revised Election act of 1930. *Pamph. L., pp.* 671, 775, *et seq.* Section 1 of that article (paragraph 225) prescribes a meeting of the board "for the purpose of checking the canvass which shall have been made by the county clerk from the statements of the district boards filed in his office," as provided in the act. In the event that all of such statements shall not have been filed, the clerk is enjoined (section 5, paragraph 229) to obtain "such statement or statements as shall be lacking, in time to be produced to such board at their next meeting, and for this purpose the statements directed to be filed with the clerk of any municipality wherein such election was held, or those directed to be filed with the county clerk, a copy certified by the secretary of state, of the statements transmitted to him, shall be sufficient." Section 8 (paragraph 232) directs the members of the board to "proceed to examine the statements and copies of statements which shall be produced before them and shall canvass and determine the votes cast at such election; and shall forthwith make two statements of the result of such election." And, by section 11 (paragraph 235), the board is required to certify that the writing so made is "a true, full and correct statement of the result of the election * * *, as the same is exhibited by the statements produced and laid before the board of county canvassers according to law."

This statement of the election result provides the basis for the "determination" by the board of canvassers, under article XIX, section 1 (paragraph 242), of the "officers * * * elected" by the voters of the county or any political subdivision thereof (except a congressional district or part thereof), and the latter is, in turn, the authority for the issuance of the "certificate of election" to the successful candidate by the chairman and clerk of the board, under the seal of the county.

The evident legislative purpose was to confine the "canvass and determination" of the votes cast to the statements made by the several local election boards, where such statements

are free from ambiguity and sufficient on their face. See *State, Gledhill* v. *The Governor*, 25 *N. J. L.* 331; *In re Board of Election*, 89 *Id.* 382. As pointed out, the record does not bear out appellants' contention that the returns made by some of the local boards were "ambiguous and not in conformity with the statute and suggested a doubt as to their correctness." We therefore have no occasion to decide what the county board may do in such circumstances.

Thus it is that the certificates of election were issued by the board's officers in obedience to the legislative mandate. Concededly, the board had, in the exercise of its statutory function, compiled the returns made by the several district boards, and had determined the result of the election. The single question raised was whether it was the province of the board to open the ballot boxes for the purpose of verifying the returns so made by the district boards; and, when this was resolved in the negative, its officers forthwith proceeded to perform the purely ministerial duty of making the certificates in accordance with the board's findings, acting within its legitimate function. It suffices to add that the vacation of the *allocaturs* would not nullify the certificates issued in conformance with the statutory command.

Moreover, the failure to proceed by rule to show cause was in no sense injurious. The relevant facts were not in dispute. The writs here were designed to serve their ancient function of compelling the performance of a plain duty imposed by the statute.

The statute provides an orderly scheme of procedure. The district boards are enjoined to count the ballots and make a return in accordance with the prescribed formula. The duty is then cast upon the board of canvassers to compile the returns so made and declare the result of the election. The authority to conduct a recount, after the result has been so determined, is vested in another tribunal.

The appeals are accordingly dismissed.

*For dismissal*—THE CHIEF JUSTICE, LLOYD, CASE, BODINE, DONGES, HEHER, PERSKIE, DEAR, WELLS, WOLFSKEIL, RAFFERTY, COLE, JJ. 12.